FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUL 03 2025

TAMMY H. DOWNS, CLERK
By: [signature] DEP CLERK

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**Central Division**

GEORGE CARTER, Individually, and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

MAINLINE HEALTH SYSTEMS, INC.,

Defendant.

Case No. 4:25-cv-665-LPR

**CLASS ACTION COMPLAINT**

**JURY DEMAND**

This case assigned to District Judge Rudofsky
and to Magistrate Judge Moore

**COMES NOW** Plaintiff George Carter, individually and on behalf of all others similarly situated, and alleges the following upon personal knowledge as to matters pertaining to Plaintiff and upon information and belief as to all other matters:

## INTRODUCTION

1. This action arises from Defendant Mainline Health Systems, Inc.'s ("Mainline" or "Defendant") failure to adequately protect the personally identifiable information ("PII") and protected health information ("PHI")[1] of its patients and customers from unauthorized access and disclosure.

2. Mainline Health Systems, Inc. is a healthcare provider that operates multiple facilities throughout Arkansas, providing medical, dental, and behavioral health services to patients across numerous counties.

[1] PII and PHI may also be referred to herein collectively as "Private Information."

3. On or about April 10, 2024, an incident occurred in which unauthorized third-party actors gained access to Mainline's computer networks and systems, compromising sensitive personal and medical information belonging to approximately 101,104 individuals. This incident may be referred to herein as the "Data Breach" or the "Breach."

4. The information compromised in the Data Breach reportedly included highly sensitive data such as Data affected includes full names, dates of birth, Social Security numbers, Social Security numbers, payment card numbers, Medicaid numbers, financial account information, and medical data.[2]

5. Defendant's security failures resulting in the Data Breach have exposed Plaintiff and the other putative Class members to substantial and continuing risks of identity theft, medical identity theft, financial fraud, and other forms of harm that may persist for years or decades. For example, Plaintiff and other Class members will have to incur costs to pay for third-party credit and identity theft monitoring services for the rest of their lives as a direct result of the Data Breach. Accordingly, Plaintiff brings this action on behalf of himself and other Class members to remedy the harm they now face, including, but not limited to, reimbursement of losses associated with identity theft and fraud, out-of-pocket costs incurred to mitigate the significant risk of future harm, compensation for time and effort spent responding to the Data Breach.

---

[2] "*Mainline Health Systems notifies 100K people of a data breach that compromised medical info, financial accounts*", June 24, 2025, by Rebecca Moody, Head of Data Research, Comparitech (located at: https://www.comparitech.com/news/mainline-health-systems-notifies-100k-people-of-a-data-breach-that-compromised-medical-info-financial-accounts/ (last accessed July 1, 2025).

6. Plaintiff brings this action seeking damages, injunctive relief, and other appropriate remedies for Defendant's negligent and inadequate data security practices that directly caused the unauthorized disclosure of sensitive personal and medical information in connection with the Data Breach.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act ("CAFA"), because: (a) this is a class action involving more than 100 class members; (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (c) at least one class member is a citizen of a state different from Defendant. This Court also has Supplemental jurisdiction to adjudicate issues pertaining to state law pursuant to under 28 U.S.C. § 1367.

8. This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within Arkansas, maintains its principal place of business in Arkansas, and the events giving rise to this action occurred in Arkansas.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant conducts business in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## THE PARTIES

### The Plaintiff

10. Plaintiff George Carter is a resident of Bastrop, Louisiana, whose personal and medical information was compromised in the data security incident described herein.

11. Plaintiff received healthcare services from Defendant and, as a condition of receiving such services, was required to provide sensitive personal and medical information to Defendant.

12. Plaintiff's information was among the data accessed and compromised by unauthorized third parties in connection with the Data Breach.

**The Defendant**

13. Defendant Mainline is a not-for-profit Arkansas corporation with its principal place of business located in Arkansas. One commentator described Mainline as "specializ[ing] in treating patients who don't have insurance or don't have adequate insurance to cover essential health services." [3]

14. Defendant is a non-profit entity that operates healthcare facilities providing medical, dental, and behavioral health services throughout multiple Arkansas counties.

15. In addition to its principal place of business at 583 West Gains, Monticello, Arkansas, 71655, Mainline reportedly has approximately 30 other locations, including in-school clinics and community centers, across multiple counties providing comprehensive primary medical, dental, and behavioral health services.

16. In the ordinary course of its business, Defendant collects, maintains, and stores vast quantities of sensitive personal and protected health information belonging to its patients and customers.

17. As a healthcare provider, Defendant routinely collects and maintains extensive personal and medical information from its patients, including but not limited to:

- Full names and contact information
- Dates of birth and Social Security numbers
- Driver's license numbers and state identification numbers
- Financial account information and payment card data

[3] *See "Mainline Health Systems notifies 100K people of a data breach that compromised medical info, financial accounts"* (cited *supra* at n. 2).

- Medical record numbers and patient identification numbers
- Health insurance policy numbers and group numbers
- Medical diagnoses and treatment information
- Prescription medication information
- Healthcare provider information

18. Defendant stores this sensitive information in electronic databases and computer systems and networks in the regular course of its business, as part of its standard business operations and patient care delivery.

19. Patients have no choice but to provide this highly sensitive information to Defendant as a prerequisite to receiving necessary medical care and services.

20. By collecting and maintaining this information, including in the regular course of its business, Defendant assumed legal and equitable duties to implement reasonable security measures to protect such information from unauthorized access and disclosure.

**<u>The Data Breach</u>**

20. On or approximately April 10, 2024, unauthorized third-party cybercriminals gained access to Defendant's computer networks and systems.

21. These unauthorized actors were later identified as ransomware gang INC, which claimed credit for the attack when it added Mainline to its data leak site in early May 2025 and uploaded various documents as proof of its claim.[4] According to media reports, since August 2023 INC has claimed 338 victims (38 of whom are healthcare companies) with 97 of

---

[4] *See "Mainline Health Systems notifies 100K people of a data breach that compromised medical info, financial accounts"* (cited *supra* at n. 2).

attacks having been being confirmed (with 16 confirmed attacks and 109 unconfirmed attacks by INC in 2025).[5]

22. These unauthorized actors were able to access and copy files containing the personal and protected health information of approximately 101,104 individuals.

23. The security incident involved the compromise of multiple categories of highly sensitive information, creating substantial risks of identity theft, financial fraud, and medical identity theft for affected individuals.

24. Upon information and belief, the unauthorized access persisted for a significant period, allowing cybercriminals ample time to copy and exfiltrate large volumes of sensitive data.

25. Defendant failed to detect the unauthorized access in a timely manner, demonstrating inadequate monitoring and intrusion detection capabilities. As one report pointed out

> Mainline doesn't provide many details into the nature of its cyber attack, simply stating that it: "experienced a data security incident on or about April 10, 2024." Comparitech has contacted the company for more information, including whether or not a ransom was demanded and/or paid, how hackers infiltrated its systems, and why it has taken so long to notify victims. We will update this article if we receive a response.[6]

This article apparently has yet to be updated.

26. In June 2025 Mainline notified the Maine Attorney General's Office

---

[5] *See "Mainline Health Systems notifies 100K people of a data breach that compromised medical info, financial accounts"* (cited *supra* at n. 2).
[6] *"Mainline Health Systems notifies 100K people of a data breach that compromised medical info, financial accounts"* (cited *supra* at n. 2).

concerning the data breach and provided a sample of the notice letter that it was sending to Plaintiff and other Class members. A copy of that sample notice letter is attached hereto as Exhibit A.

**Defendant's Delayed and Inadequate Response**

27. Despite the gravity of the security incident, Defendant failed to provide timely notification to affected individuals about the compromise of their sensitive information.

28. Affected individuals (Plaintiff and other Class members) did not receive notification of the incident until on or about June 20, 2025, months after Defendant claims to have discovered the breach, and over a year after the Data Breach actually took place.

29. This substantial delay in notification prevented affected individuals from taking prompt protective measures to mitigate potential harm from the unauthorized disclosure of their information.

30. As Comparitech's head of Research pointed out in her June 25 article:

> On average, it takes US healthcare ***organizations 3.7 months to report a breach*** following a ransomware attack. ***Mainline's delay of over a year is well above this average and puts patients' data at significant risk, especially due to the nature of information involved.*** [7]

**Industry Standards and Legal Requirements**

31. Healthcare entities like Defendant are subject to numerous federal and state

---

[7] "*Mainline Health Systems notifies 100K people of a data breach that compromised medical info, financial accounts*" (cited *supra* at n. 2) (emphasis added) (citing "*Four months: The average time it takes to report a data breach following a ransomware attack*", May 15, 2025, by Rebecca Moody, Head of Data Research, Comparitech (located at:https://www.comparitech.com/news/average-data-breach-report-time-ransomware-attack/ ) (last accessed July 3, 2025) ("Healthcare had the lowest with 3.7 months, …").

laws and regulations requiring the implementation of reasonable security safeguards to protect personal and health information.

32. The healthcare industry has been specifically warned about cybersecurity threats and the need for robust data protection measures through guidance from federal agencies and industry organizations.

33. Reasonable security measures that Defendant should have implemented include, but are not limited to:

a. Regular security assessments and vulnerability testing
b. Multi-factor authentication for system access
c. Network segmentation and access controls
d. Employee training on cybersecurity best practices
e. Encryption of sensitive data both in transit and at rest
f. Robust monitoring and intrusion detection systems
g. Incident response planning and testing

34. Defendant's security measures were thoroughly unreasonable and inadequate in light of the sensitive nature of the information it maintained and the well-known risks facing healthcare organizations.

**Harm to Plaintiff and Other Class Members**

35. As a direct result of Defendant's inadequate security practices, Plaintiff and class members have suffered and continue to suffer various forms of harm, including:

a. Unauthorized disclosure of highly sensitive personal and medical information
b. Substantially increased risk of identity theft and financial fraud
c. Risk of medical identity theft and healthcare fraud
d. Costs associated with protective measures and credit monitoring
e. Time and effort spent addressing the consequences of the breach

f. Anxiety and emotional distress related to the compromise of private information

g. Diminished value of their personal information

36. The stolen information has significant value on illegal markets and may be used by cybercriminals for years to come to commit various forms of fraud and identity theft.

37. Plaintiff and other Class members face a substantial and imminent ongoing risk of harm that will persist indefinitely due to the permanent nature of the compromised information. As Comparitech's Head of Research Rebecca Moody stated in her recent report on the Mainline Data Breach:

> As we can see with this attack on Mainline Health Systems, ransomware attacks on healthcare companies not only have the potential to cause widespread disruption through the encryption of systems but also have ongoing consequences for months–and even years–after the attack due to data theft.[8]

**FACTS SPECIFIC TO PLAINTIFF**

38. George Carter is a resident of Bastrop, Louisiana (and formerly a resident of Arkansas) whose personal and medical information was compromised and improperly shared with unauthorized third parties as a result of the Data Breach.

39. Mr. Carter became aware of the data breach when he received a notice letter from Mainline dated June 20, 2025. A copy of the Notice Letter received by Mr. Carter is attached as Exhibit B.

40. Plaintiff is and has been a patient of Mainline for several years, and as such was required, in order to obtain services offered and provided by Mainline, to provide it with his Private Information (including both PII and PHI), and including, among other things, sensitive and confidential financial, health, social security, and other information. As a result, Defendant

[8] "*Mainline Health Systems notifies 100K people of a data breach that compromised medical info, financial accounts*" (cited *supra* at n. 2).

possessed, stored, maintained and controlled that information, and was responsible for it and for safeguarding it and keeping it secure and confidential for as long as it was stored and in its possession, custody and/or control.

41. As a result of these circumstances, and Defendant's failure to do so and its failure to fulfill its duties and responsibilities in this respect, Mr. Carter's Private Information was among the data accessed by an unauthorized third-party in connection with and as a result of the Data Breach. Mr. Carter is therefore a member of the Class.

42. Plaintiff received the Notice Letter from Defendant in late June 2025, stating that "potentially impacted files may have contained your name, address, Social Security Number, and Date of Birth."

43. The Plaintiff's Notice Letter also stated, in part, that Mainline had "experienced a security incident on or about April 10, 2024 that impacted our network" and that "[b]ased on that review we discovered on May 21, 2025 that certain files containing your protected personal information were subject to unauthorized access or acquisition as a result of the incident. We want to make you aware of the incident and provide you with steps you can take to further protect your information."

44. Plaintiff's Notice letter did not explain why there was a 13 month lag between the time Mainline experienced the Data Breach in April 2024 and the time it finally began to notify Plaintiff and other Class members in June of 2025 that their Private Information was compromised, even though, as Mainline also claimed in the letter that "[u]pon learning of the issue" it has supposedly "commenced a prompt and thorough investigation. As part of our investigation, we notified federal law enforcement of the incident, engaged external cybersecurity experts and conducted a manual review of the impacted files."

45. Indeed, Mainline's letter conspicuously failed to clearly specify when it "learn[ed] of the issue," despite claiming simultaneously that "[t]he privacy and security of the protected personal information entrusted to us is of the utmost importance" and that it supposedly "continue[d] to take significant measures to protect your information."

46. As a resufl of the Data Breach, Mr. Carter was and continues to be injured in multiple material respects.

47. Plaintiff has suffered significant lost time dealing with the consequences of the Data Breach. This includes and continues to include, among other things: time spent verifying the legitimacy and impact of the Data Breach; time spent exploring potentially applications for a credit freeze, credit monitoring options, and identity theft insurance options; and time spent searching for and consulting with legal counsel regarding options for seeking and remedying and/or mitigating the effects of the Data Breach.

48. For example, Plaintiff has spent approximately 8-10 hours over the past two weeks just on informing himself about the Data Breach and its impact and potential future repercussions to him, including reviewing and/or addressing the instances of attempted theft and fraudulent charges described just below.

49. Since the time of the Data Breach, Plaintiff has also experienced multiple incidents of attempted identity theft and unauthorized efforts by criminal actors to incur monetary charges in his name. For example, in June of 2025 an attempt was made to open a PayPal account in Mr. Carter's name and process a charge of nearly $800.00 to that account. Several other such attempts were also recently made using Mr. Carter's Private Information. In another instance (among others) an attempt was apparently made to purchase a firearm using Plaintiff's information.

50. Since the time of the Data Breach, Plaintiff has spent time dealing with the fallout

from the Data Breach, and has suffered significant stress and anxiety due to the public dissemination of his Private Information, which he believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and using and abusing his Private Information for purposes of identity theft and fraud. Plaintiff is concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

51. Plaintiff also has been and continues to be injured by the serious and material risk of future harm suffer from the Data Breach; this risk is imminent and substantial because his data has been exposed within and as a result of the Data Breach. The highly sensitive and confidential nature of the data involved presents a very high risk of identity theft or fraud, and the indication that some or all of Plaintiff's exposed information has already been misused and is significantly likely to continue to be misused in the future.

52. Plaintiff and other Class members also suffered actual injury in the form of damages to and diminution in the value of their Private Information — a condition of intangible property that they entrusted to Defendant, which was compromised in and as a result of the Data Breach.

53. As mentioned above, as a result of the Data Breach, Plaintiff also has experienced increased anxiety as a result of the loss of privacy, and anxiety over the impact of cybercriminals accessing, using, and selling their Private Information.

54. Plaintiff (and other Class members) have also suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from their Private Information being placed in the hands of unauthorized third parties/criminals.

55. Plaintiff and other Class members have a strong continuing interest in ensuring that their Private Information, which, upon information and belief, remains backed up in Defendant's

possession, custody and/or control, is protected and safeguarded from future breaches on a consistent and ongoing basis. The same is true of other Class members.

56. Had Plaintiff (and other Class members) known that their Private Information would not have been adequately secured and protected by Defendant, they would not have provided their Private Information to Defendant, done business with Defendant or purchased Defendant's products or services in such a way that required that they provide their Private Information to Defendant, and/or they would have insisted that the data issue not be stored, or continue to be stored, in Defendant's insecure network, databases and systems.

57. Plaintiff (and other Class members) has suffered actual injury from having his Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of his Private Information, a form of property that Defendant obtained from him; (b) violation of his privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

58. As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. And, as a result of the Data Breach, he is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

## CLASS ACTION ALLEGATIONS

59. Plaintiff brings this action on behalf of a class defined as follows:

> All individuals whose personal information or protected health information was accessed and compromised in the data security incident affecting Mainline Health Systems, Inc. that occurred on or about April 10, 2024.

60. Excluded from the Class are: (a) Defendant and its subsidiaries and

affiliates; (b) all employees, officers, and directors of Defendant; (c) all persons who make a timely election to be excluded from the Class; (d) governmental entities; and (e) the Court and its staff.

61. **<u>Numerosity</u>**: The Class consists of approximately 101,104 individuals, making joinder impracticable.

62. **<u>Commonality</u>**: Common questions of law and fact exist as to all Class members, including:

- Whether Defendant owed a duty to Class members to reasonably protect their personal information;
- Whether Defendant's security measures were reasonable under the circumstances;
- Whether Defendant breached its duties to Class members;
- Whether Class members suffered harm as a result of Defendant's conduct; and
- The appropriate measure of damages and other relief.

63. **<u>Typicality</u>**: Plaintiff's claims are typical of those of the Class members, as all arise from the same data security incident and Defendant's uniform conduct.

64. **<u>Adequacy</u>**: Plaintiff will fairly and adequately represent the interests of the Class and has no interests that conflict with those of the Class.

65. **<u>Superiority</u>**: A class action is superior to other available methods for fairly and efficiently adjudicating this controversy, as individual litigation would be impracticable given the relatively modest damages suffered by each Class member compared to the cost of individual litigation.

## <u>CAUSES OF ACTION</u>

## <u>COUNT I: NEGLIGENCE</u>

66. Plaintiff incorporates by reference all preceding allegations in paragraphs 1 through 65.

67. Defendant owed Plaintiff and Class members a duty to exercise reasonable care in collecting, storing, maintaining, and safeguarding their personal and protected health information.

68. This duty arose from Defendant's undertaking to collect and maintain such information, the special relationship between healthcare providers and patients, and applicable laws and regulations.

69. Defendant breached its duty of care by failing to implement reasonable security measures to protect Plaintiff's and Class members' sensitive information, including:

a. Failing to implement adequate access controls and authentication measures
b. Failing to adequately monitor its systems for unauthorized access
c. Failing to implement proper network segmentation
d. Failing to encrypt sensitive data
e. Failing to conduct adequate security assessments and testing
f. Failing to provide adequate cybersecurity training to employees
g. Failing to implement adequate incident response procedures

70. Defendant's breaches of its duty of care were the proximate cause of the unauthorized access and disclosure of Plaintiff's and Class members' sensitive information.

71. As a direct and proximate result of Defendant's negligence, Plaintiff and Class members have suffered the damages described herein.

## COUNT II: NEGLIGENCE PER SE

72. Plaintiff incorporates by reference all preceding allegations in paragraphs 1 through 65.

73. Defendant's conduct violated various federal and state statutes and regulations designed to protect personal and health information, including but not limited to relevant provisions of HIPAA and state data protection laws.

74. Plaintiff and Class members are within the class of persons these statutes and regulations were designed to protect.

75. The harm suffered by Plaintiff and Class members is of the type these statutes and regulations were designed to prevent.

76. Defendant's violation of these statutes and regulations constitutes negligence per se.

**COUNT III: BREACH OF IMPLIED CONTRACT**

77. Plaintiff incorporates by reference all preceding allegations in paragraphs 1 through 65.

78. By collecting Plaintiff's and Class members' sensitive personal and health information, Defendant entered into implied contracts with them to reasonably safeguard such information.

79. These implied contracts included Defendant's promise to implement reasonable security measures to protect the confidentiality and security of the entrusted information.

80. Defendant materially breached these implied contracts by failing to implement adequate security measures and allowing unauthorized access to Plaintiff's and Class members' information.

81. As a direct result of Defendant's breach, Plaintiff and Class members have suffered the damages described herein.

**COUNT IV: UNJUST ENRICHMENT**

82. Plaintiff incorporates by reference all preceding allegations in paragraphs 1 through 65.

83. Plaintiff and Class members conferred benefits upon Defendant by entrusting their sensitive personal and health information to Defendant and paying for healthcare services.

84. Defendant accepted and retained these benefits while failing to provide the reasonable data security that Plaintiff and Class members expected and were entitled to receive.

85. It would be inequitable for Defendant to retain these benefits without providing adequate data security.

86. Defendant should be required to disgorge the benefits it received and provide restitution to Plaintiff and Class members.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests that this Court:

a. Certify this action as a class action under Federal Rule of Civil Procedure 23(b)(2) and/or 23(b)(3);
b. Appoint Plaintiff as class representative and Plaintiff's counsel as class counsel;
c. Award Plaintiff and Class members actual damages in an amount to be determined at trial;
d. Award Plaintiff and Class members restitution and disgorgement of Defendant's ill-gotten gains;
e. Grant appropriate injunctive relief, including but not limited to:
    a. Requiring Defendant to implement comprehensive information security programs
    b. Requiring Defendant to provide adequate credit monitoring and identity theft protection services
    c. Requiring Defendant to conduct regular third-party security assessments; and
    d. Requiring Defendant to provide prompt and detailed notification of any future security incidents.

f. Award Plaintiff and Class members pre-judgment and post-judgment interest;

g. Award Plaintiff and Class members reasonable attorneys' fees and costs; and

h. Grant such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 3, 2025

**Respectfully submitted,**

Christopher D. Jennings
(AR Bar No.2006306)
**JENNINGS & EARLEY PLLC**
500 President Clinton Ave., Ste. 110
Little Rock, AR 72201
Tel: 501-255-8569
chris@jefirm.com

Carl V. Malmstrom*
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
Attorney No. 38819
111 W. Jackson Blvd., Suite 1700
Chicago, Illinois 60604
Tel: (312) 984-0000
Fax: (212) 686-0114
malmstrom@whafh.com

Kent A. Bronson*
**BRONSON LEGAL LLC**
1216 Broadway, 2nd Fl.
New York, New York 10001
Tel: (609) 276-0406
Fax: (212) 868-1229
bronsonlegalny@gmail.com

* *pro hac vice* application forthcoming

**Attorneys for Plaintiff and the Proposed Class**

# EXHIBIT A

mainlinehealth systems, inc.
P.O. Box 989728
West Sacramento, CA 95798-9728

Enrollment Code: [redacted]
To Enroll, Scan the QR Code Below:

[redacted]

SCAN ME

Or Visit:
[redacted]

[redacted]

*<<Variable Header: IMPORTANT INFORMATION*
*PLEASE REVIEW CAREFULLY OR NOTICE OF DATA BREACH>>*

June 20, 2025

Dear [redacted]

I am writing with important information regarding a recent data security incident at Mainline Health Systems, Inc. ("Mainline"). The privacy and security of the protected personal information entrusted to us is of the utmost importance. As such, we wanted to provide you with information about the incident, explain the services we are making available to you, and let you know that we continue to take significant measures to protect your information.

*What Happened?*

We experienced a security incident on or about April 10, 2024 that impacted our network.

*What We Are Doing.*

Upon learning of the issue, we commenced a prompt and thorough investigation. As part of our investigation, we notified federal law enforcement of the incident, engaged external cybersecurity experts and conducted a manual review of the impacted files. Based on that review we discovered on May 21, 2025 that certain files containing your protected personal information were subject to unauthorized access or acquisition as a result of the incident. We want to make you aware of the incident and provide you with steps you can take to further protect your information.

Additionally, Mainline is reviewing its existing policies and training protocols relating to data protection while enhancing security measures and monitoring tools to further mitigate risks of this nature. We continually evaluate and modify our practices and internal controls to enhance the security and privacy of your protected personal information.

*What Information Was Involved?*

The potentially impacted files may have contained your name, address, and [redacted]

*What You Can Do.*

**We have no evidence that any of your information has been used for identity theft or to commit financial fraud.** Nevertheless, out of an abundance of caution, we want to make you aware of the incident and provide you with complimentary access to IDX identity protection services which include: 12 months of Credit and CyberScan monitoring, a $1,000,000 insurance reimbursement policy, and fully managed ID theft recovery services. With this protection, IDX will help you resolve issues if your identity is compromised.

*How do I enroll for the free services?*

To enroll in credit monitoring services at no charge, please log on to [redacted] or scan the QR code above, and follow the instructions provided. When prompted please provide the following enrollment code to receive protection services: [redacted]

In order for you to receive the monitoring services described above, you must enroll within 90 days from the date of this letter, by [redacted] Please note that when signing up for monitoring services, you may be asked to verify personal information for your own protection to confirm your identity.

This letter also provides other precautionary measures to protect your personal information, including placing a fraud alert and/or security freeze on your credit files and/or obtaining a free credit report. Additionally, you should always remain vigilant in reviewing your financial account statements and credit reports for fraudulent or irregular activity on a regular basis.

*For More Information.*

Please accept our apologies that this incident occurred. We are committed to maintaining the privacy of protected personal information in our possession and have taken precautions to safeguard it. We continually evaluate and modify our practices and controls to enhance the security and privacy of your personal information.

**If you have any further questions regarding this incident, please call our dedicated and confidential toll-free response line that we have set up to respond to questions at [redacted], scan the QR code above, or enroll online at** [redacted] Representatives are available from 8:00 am to 8:00 pm Central Time, Monday through Friday, excluding holidays. This response line is staffed with professionals familiar with this incident and knowledgeable on what you can do to help protect against potential misuse of your information.

Sincerely,

Mainline Health Systems, Inc.

## – OTHER IMPORTANT INFORMATION –

**1. Placing a Fraud Alert.**

Whether or not you choose to use the complimentary credit monitoring services, we recommend that you place an initial 90-day "Fraud Alert" on your credit files, at no charge. A fraud alert tells creditors to contact you personally before they open any new accounts. To place a fraud alert, call any one of the three major credit bureaus at the numbers listed below. As soon as one credit bureau confirms your fraud alert, they will notify the others.

***Equifax***
P.O. Box 105069
Atlanta, GA 30348-5069
https://www.equifax.com/personal/credit-report-services/credit-fraud-alerts/
(800) 525-6285

***Experian***
P.O. Box 9554
Allen, TX 75013
https://www.experian.com/fraud/center.html
(888) 397-3742

***TransUnion***
Fraud Victim Assistance Department
P.O. Box 2000
Chester, PA 19016-2000
https://www.transunion.com/fraud-alerts
(800) 680-7289

**2. Consider Placing a Security Freeze on Your Credit File.**

If you are very concerned about becoming a victim of fraud or identity theft, you may request a "security freeze" be placed on your credit file at no cost. A security freeze prohibits, with certain specific exceptions, the consumer reporting agencies from releasing your credit report or any information from it without your express authorization. You may place a security freeze on your credit report by sending a request in writing, by mail, to all three nationwide credit reporting companies. To find out more on how to place a security freeze, you can use the following contact information:

***Equifax Security Freeze***
P.O. Box 105788
Atlanta, GA 30348-5788
https://www.equifax.com/personal/credit-report-services/credit-freeze/
(888) 298-0045

***Experian Security Freeze***
P.O. Box 9554
Allen, TX 75013
http://experian.com/freeze
(888) 397-3742

***TransUnion Security Freeze***
P.O. Box 160
Woodlyn, PA 19094
https://www.transunion.com/credit-freeze
(888) 909-8872

In order to place the security freeze, you will need to supply your name, address, date of birth, Social Security number, and other personal information. After receiving your freeze request, each credit reporting company will send you a confirmation letter containing a unique PIN (personal identification number) or password. Keep the PIN or password in a safe place. You will need it if you choose to lift the freeze.

If you do place a security freeze prior to enrolling in the credit monitoring service as described above, you will need to remove the freeze in order to sign up for the credit monitoring service. After you sign up for the credit monitoring service, you may refreeze your credit file.

**3. Obtaining a Free Credit Report.**

Under federal law, you are entitled to one free credit report every 12 months from each of the above three major nationwide credit reporting companies. Call **1-877-322-8228** or request your free credit reports online at **www.annualcreditreport.com**. Once you receive your credit reports, review them for discrepancies. Identify any accounts you did not open or inquiries from creditors that you did not authorize. Verify all information is correct. If you have questions or notice incorrect information, contact the credit reporting company.

**4. Additional Helpful Resources.**

Even if you do not find any suspicious activity on your initial credit reports, the Federal Trade Commission (FTC) recommends that you check your credit reports periodically. Checking your credit report periodically can help you spot problems and address them quickly.

If you find suspicious activity on your credit reports or have reason to believe your information is being misused, call your local law enforcement agency and file a police report. Be sure to obtain a copy of the police report, as many creditors will want the information it contains to absolve you of the fraudulent debts. You may also file a complaint with

the FTC by contacting them on the web at www.ftc.gov/idtheft, by phone at 1-877-IDTHEFT (1-877-438-4338) or TTY: 1-866-653-4261, or by mail at Federal Trade Commission, Consumer Response Center, 600 Pennsylvania Avenue, NW, Washington, DC 20580. Your complaint will be added to the FTC's Identity Theft Data Clearinghouse, where it will be accessible to law enforcement for their investigations. In addition, you may obtain information from the FTC about fraud alerts and security freezes.

You may also reach out to the Social Security Administration to notify them of the impact on your Social Security Number. They may be reached via the telephone by contacting the National 800 Number at 1-800-772-1213 between 8:00 a.m. – 7:00 p.m. Eastern Time, Monday through Friday. If you are deaf or hard of hearing and use TTY equipment, you can call the TTY number at 1-800-325-0778.

**5. Protecting Your Medical Information.**

We have no information to date indicating that your medical information involved in this incident was or will be used for any unintended purposes. As a general matter, however, the following practices can help to protect you from medical identity theft.

- Only share your health insurance cards with your health care providers and other family members who are covered under your insurance plan or who help you with your medical care.
- Review your "explanation of benefits statement" which you receive from your health insurance company. Follow up with your insurance company or care provider for any items you do not recognize. If necessary, contact the care provider on the explanation of benefits statement and ask for copies of medical records from the date of the potential access (noted above) to current date.
- Ask your insurance company for a current year-to-date report of all services paid for you as a beneficiary. Follow up with your insurance company or the care provider for any items you do not recognize.

**6. State Specific Information.**

**Iowa Residents**: You may contact law enforcement or the Iowa Attorney General's Office to report suspected incidents of identity Theft: Office of the Attorney General of Iowa, Consumer Protection Division, Hoover State Office Building, 1305 East Walnut Street, Des Moines, IA 50319, www.iowaattorneygeneral.gov, Telephone: 515-281-5164.

**Maryland Residents**: You may obtain information about avoiding identity theft from the Maryland Attorney General's Office: Office of the Attorney General of Maryland, Consumer Protection Division, 200 St. Paul Place, Baltimore, MD 21202, www.oag.state.md.us/Consumer, Telephone: 888-743-0023.

**Massachusetts Residents**: Under Massachusetts law, you have the right to obtain a police report in regard to this incident. If you are the victim of identity theft, you also have the right to file a police report and obtain a copy of it.

**New York Residents:** You may obtain information about preventing identity theft from the New York Attorney General's Office: Office of the Attorney General, The Capitol, Albany, NY 12224-0341; https://ag.ny.gov/consumer-frauds-bureau/identity-theft; Telephone: 800-771-7755.

**New Mexico Residents**: You have rights under the federal Fair Credit Reporting Act (FCRA) which include, among others, the right to know what is in your file; to dispute incomplete or inaccurate information; and to have consumer reporting agencies correct or delete inaccurate, incomplete, or unverifiable information. For more information, please visit www.consumer.ftc.gov/articles/pdf-0096-fair-credit-reporting-act.pdf or www.ftc.gov.

**North Carolina Residents**: You may obtain information about preventing identity theft from the North Carolina Attorney General's Office: Office of the Attorney General of North Carolina, Consumer Protection Division, 9001 Mail Service Center, Raleigh, NC 27699-9001, www.ncdoj.gov/, Telephone: 877-566-7226 (Toll-free within North Carolina), 919-716-6000.

**Oregon Residents**: You may obtain information about preventing identity theft from the Oregon Attorney General's Office: Oregon Department of Justice, 1162 Court Street NE, Salem, OR 97301-4096, www.doj.state.or.us/, Telephone: 877-877-9392.

**Washington D.C. Residents**: You may obtain information about preventing identity theft from the Office of the Attorney General for the District of Columbia, 400 6th Street NW, Washington D.C. 20001, https://oag.dc.gov/consumer-protection, Telephone: 202-442-9828.

**Rhode Island Residents**: You may contact law enforcement, such as the Rhode Island Attorney General's Office, to report incidents of identity theft or to learn about steps you can take to protect yourself from identity theft. You can contact the Rhode Island Attorney General at: Rhode Island Office of the Attorney General, 150 South Main Street, Providence, RI 02903, www.riag.ri.gov, 401-274-4400.
There were 0 Rhode Island residents impacted by this incident.

**All US Residents:** Identity Theft Clearinghouse, Federal Trade Commission, 600 Pennsylvania Avenue, NW Washington, DC 20580, https://consumer.ftc.gov, 1-877-IDTHEFT (438-4338), or TTY: 1-866-653-4261.

# EXHIBIT B

mainlinehealth systems, inc.
.O. Box 989728
Vest Sacramento, CA 95798-9728

Enrollment Code: 2TD2HH832P
To Enroll, Scan the QR Code Below:

SCAN ME

Or Visit:
https://response.idx.us/mainline

Jeorge Carter
[redacted]

***IMPORTANT INFORMATION***
***PLEASE REVIEW CAREFULLY***

June 20, 2025

Dear George:

I am writing with important information regarding a recent data security incident at Mainline Health Systems, Inc. ("Mainline"). The privacy and security of the protected personal information entrusted to us is of the utmost importance. As such, we wanted to provide you with information about the incident, explain the services we are making available to you, and let you know that we continue to take significant measures to protect your information.

*What Happened?*

We experienced a security incident on or about April 10, 2024 that impacted our network.

*What We Are Doing.*

Upon learning of the issue, we commenced a prompt and thorough investigation. As part of our investigation, we notified federal law enforcement of the incident, engaged external cybersecurity experts and conducted a manual review of the impacted files. Based on that review we discovered on May 21, 2025 that certain files containing your protected personal information were subject to unauthorized access or acquisition as a result of the incident. We want to make you ware of the incident and provide you with steps you can take to further protect your information.

dditionally, Mainline is reviewing its existing policies and training protocols relating to data protection while hancing security measures and monitoring tools to further mitigate risks of this nature. We continually evaluate and odify our practices and internal controls to enhance the security and privacy of your protected personal information.

*t Information Was Involved?*

otentially impacted files may have contained your name, address, and Social Security Number, Date of Birth.

*You Can Do.*

**ve no evidence that any of your information has been used for identity theft or to commit financial fra** eless, out of an abundance of caution, we want to make you aware of the incident and provide you entary access to IDX identity protection services which include: 12 months of Credit and Cyber g, a $1,000,000 insurance reimbursement policy, and fully managed ID theft recovery services. With , IDX will help you resolve issues if your identity is compromised.